Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN HOGAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>WAY.COM, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Sean Hogan ("Plaintiff Hogan" or "Hogan") brings this Class Action Complaint and Demand for Jury Trial against Defendant Way.com, Inc. ("Defendant" or "Way.com") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's

conduct. Plaintiff Hogan alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Hogan is a resident of Stratford, New Jersey.

2. Defendant Way.com is a Delaware registered company located in Fremont, California. Defendant Way.com conducts business throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is headquartered in this District, and the wrongful conduct giving rise to this case was directed by Defendant from this District to the Plaintiff.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints

about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2026 alone, at a rate of 136.8 million per day. www.robocallindex.com (last visited March 22, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Way.com operates a fintech platform that offers consumers a range of car-related services including parking reservations, car washes, auto insurance quotes, auto refinance loans, and other automotive services at competitive rates.[3]

15. Way.com sends telemarketing solicitation text messages to generate business for its auto refinance services.

16. Unfortunately, some of the text messages that Way.com sends are sent to consumers' phone numbers that are registered on the DNC, as per Plaintiff's experience.

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.way.com/auto-refinance

17. 408-539-0307 is a number used by Way.com to send text messages to consumers, as per Plaintiff's experience.

18. According to Robokiller.com, as of February 23, 2026, 619 text messages were blocked by consumers from 408-539-0307 — one of at least two telephone numbers used by Defendant to send solicitation texts — compared to only 134 that were allowed, reflecting an approximately 82% block rate. This high-volume blocking data demonstrates that Defendant transmitted solicitation texts at scale to a large number of consumers, the overwhelming majority of whom affirmatively blocked these messages from being delivered.



[4]

[4] https://lookup.robokiller.com/p/408-539-0307

19. On information and belief, Defendant Way.com obtains consumer telephone numbers and lead data from third-party lead generation sources, including LendingTree, an online loan marketplace.

20. The text message sent to Plaintiff Hogan from 650-284-2814 on January 20, 2026, explicitly referenced a 'LendingTree auto refinance pre-qualification' associated with the telephone number, confirming that Defendant utilized lead data sourced from LendingTree to initiate the solicitation.

21. Defendant Way.com sent solicitation text messages to Plaintiff Hogan's telephone number based on lead data associated with an individual named Joseph, not the Plaintiff, demonstrating that Defendant failed to verify whether the telephone numbers obtained from third-party lead sources belonged to the individuals identified in the lead data, or whether those individuals had consented to receive solicitations.

22. Upon information and belief, Plaintiff Hogan's telephone number was either (a) previously assigned to an individual named Joseph and subsequently reassigned to Plaintiff Hogan as a new subscriber, or (b) erroneously associated with that individual through defective or stale lead data obtained by Defendant from a third-party source. In either case, no valid prior express written consent to contact Plaintiff Hogan existed at the time Defendant transmitted the solicitation text messages at issue, as any purported consent was associated with a different

individual — not with Plaintiff Hogan as the actual current subscriber and exclusive user of the number.

23. Defendant failed to implement any process to verify whether the telephone numbers obtained from third-party lead sources had been reassigned to new subscribers prior to initiating solicitations. Had Defendant conducted any such verification, including through commercially available reassigned number databases, it would have identified that Plaintiff Hogan, not Joseph, was the current subscriber of the number, and that no consent to contact Plaintiff existed.

24. In response to these text messages, Plaintiff Hogan brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and award of statutory damages to the members of the Class and costs.

**PLAINTIFF HOGAN'S ALLEGATIONS**

25. Plaintiff Hogan is the sole owner and exclusive user of his cell phone number ending in 1152.

26. Plaintiff Hogan has owned his cell phone number for well over 15 years.

27. Plaintiff Hogan registered his cell phone number on the DNC on December 11, 2004.

28. Plaintiff Hogan uses his cell phone number for personal use only as one would use a landline telephone number in a home.

29. Plaintiff Hogan uses his cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

30. Plaintiff Hogan pays for his cell phone plan. It is not reimbursed by a business.

31. Plaintiff Hogan has never had his cell phone number associated with a business.

32. This phone number is not used in any business or marketing materials.

33. Plaintiff Hogan has never listed his cell phone number publicly as a business contact number.

34. Plaintiff Hogan's cell phone is the functional equivalent of a residential telephone, used exclusively for personal, family, and household purposes, and it is therefore a "residential telephone" within the meaning of 47 C.F.R. § 64.1200(c) and (d).

35. On January 20, 2026 at 10:42 AM, Plaintiff Hogan received an unsolicited text message to his cell phone from 650-284-2814 regarding an auto refinance quote:




36. Also on January 20, 2026, Plaintiff Hogan received an unsolicited text message to his cell phone from 408-539-0307 soliciting auto refinance services.

37. On January 21, 2026 at 9:02 AM, Plaintiff Hogan received a third unsolicited text message to his cell phone from 408-539-0307:




38. The text messages that Plaintiff Hogan received are addressed to Joseph.

39. Plaintiff Hogan does not know who Joseph is, and has never identified as Joseph.

40. In addition, Plaintiff Hogan was not looking to refinance an auto loan.

41. The three text messages that Plaintiff Hogan received are all solicitations for auto refinance services.

42. The text messages explicitly state that they were sent from Way.com.

43. Plaintiff Hogan has never done business with Way.com or consented to be contacted by them.

44. The unauthorized solicitation text messages that Plaintiff received from the Defendant have harmed Plaintiff Hogan in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

45. Seeking redress for these injuries, Plaintiff Hogan, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

46. Plaintiff Hogan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Way.com texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

47. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Hogan anticipates the need to amend the Class definitions following appropriate discovery.

48. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

49. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Way.com placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text message;

(b) whether the text messages constitute a violation of the TCPA; and

(c) whether members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

50. **Adequate Representation**: Plaintiff Hogan will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent

and experienced in class actions. Plaintiff Hogan has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Hogan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Hogan nor his counsel have any interest adverse to the Class.

51. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Hogan. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hogan and the Do Not Call Registry Class)**

52. Plaintiff repeats and realleges paragraphs 1-51 of this Complaint and incorporates them by reference herein.

53. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

55. Text messages constitute 'telephone calls' within the meaning of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). The FCC has consistently interpreted the TCPA's DNC provisions to extend to text messages. See Targeting and Eliminating Unlawful Text Messages, 89 FR 5098-01 (Jan. 26, 2024). This Court's

own district has confirmed that interpretation. See Wilson v. Medvidi Inc., No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025) (holding that SMS messages are subject to the TCPA's DNC rules post-McLaughlin).

56. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Hogan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

57. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Hogan and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

58. As a result of Defendant’s conduct as alleged herein, Plaintiff Hogan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

59. To the extent Defendant’s misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA:

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hogan requests a jury trial.

**SEAN HOGAN**, individually and on behalf of all others similarly situated,

DATED this 24th day of March, 2026.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.

237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*